**Ex parte John Otis BARNETT.**

No. B–9137.

Supreme Court of Texas.

May 14, 1980.

John O. Barnett, pro se.

Michael Tibbals, Dallas, for respondent.

SPEARS, Justice.

In an original proceeding, Relator John Otis Barnett seeks a writ of habeas corpus to secure his release from a commitment

order of the 219th Judicial District Court of Collin County. The commitment order arises from a motion for contempt filed by Barnett's former wife, Deborah, in which she alleges that Barnett failed to pay child support as ordered by the 330th Judicial District Court of Dallas County. The trial court of Collin County in open court orally found Barnett in contempt, and although no written judgment of contempt was rendered coincidently, the trial court signed a commitment order containing both punitive and coercive provisions. Relator John Barnett first applied to the court of civil appeals for a writ of habeas corpus but was denied relief. 594 S.W.2d 805. He then sought a writ from this court. After he filed his application here, we granted the writ and ordered relator released on bond pending our decision in the case.

The parties were divorced in Dallas County on October 15, 1975. Deborah was named managing conservator of the child, and John Barnett was ordered to pay $125 per month to her as child support. Subsequently, John filed a motion to modify the divorce decree, asking that he be named managing conservator, and Deborah cross-filed for an increase in child support. On May 4, 1978, a Dallas County jury determined that Deborah should remain the managing conservator of the child. The court then on June 29, 1978 heard Deborah's motion for contempt and her motion to increase child support. In a judgment signed August 1, 1978, the trial court of Dallas County ordered that Deborah remain managing conservator and that John pay child support of $400 per month beginning with the first payment on July 1, 1978.

The judgment further set forth the rights of John as possessory conservator, awarded Deborah attorney's fees, and denied Deborah's motion for contempt. On September 8, 1978, Deborah filed another motion for contempt alleging that the court's order of "May 4, 1978" was willfully disobeyed. Her motion was not heard by the Dallas County District Court.

On August 21, 1979, on Deborah's motion, the entire cause was transferred from the 330th District Court of Dallas County to the 219th District Court of Collin County. Thereafter, on October 4, 1979, Deborah filed a motion for contempt in Collin County, alleging that John had willfully disobeyed the order of "May 4, 1978" of the Dallas County court and that he was $3,450.00 in arrears. Alternatively, she sought a judgment for that amount. She further alleged she was then a resident of Collin County. John responded with a cross-motion to reduce the child support and alternatively, to terminate his parental rights.

The Collin County court heard both motions on November 16, 1979. At the conclusion of the hearing, the court announced that he was granting the motion for contempt and stated from the bench:

> I will set punishment at 24 hours confinement in the Collin County Jail, set arrearage in the amount of $5,250, plus attorney's fees and costs as set herein. I will further order that the Respondent be confined until the arrearage in that amount is paid herein.

The commitment order, dated November 16, 1979, was signed by the trial judge and is set forth in the margin.[1] No written judg-

---

1.     TO THE SHERIFF OF COLLIN COUNTY—GREETINGS:

You are hereby commanded to receive, take into custody and confine within the jail of your County, John Barnett, who is hereby committed to the said jail for the offense of contempt of Court arising out of the disobedience of certain orders in CAUSE No. 219–700–79, In the Interest of Stephen Loyd Barnett, A Child, in the District Court of Collin County, Texas.

The said contemner shall be released from custody when all the conditions have been met and all payments made as set out in the attached exact copy of the judgment of the Court herein.

Given under my official hand and seal of said Court at McKinney, Texas, this the 16th day of November A.D. 1979.

ment of contempt was signed, however, until February 6, 1980, eight days after John filed his application for writ of habeas corpus in this court.

█ The power to punish a party who fails or refuses to obey a prior order or decree of the court for contempt is an inherent power of a court and is an essential element of judicial independence and authority. *Ex Parte Gorena*, 595 S.W.2d 841 (Tex.1979); *see Ex parte Padron*, 565 S.W.2d 921 (Tex.1978); Tex.Rev.Civ.Stat. Ann. article 1911a (Vernon).[2] For this court to order the release of relator, the trial court's order of commitment must be void, either because it was beyond the power of the court or because it deprived the relator of his liberty without due process of law. *See Ex parte Gordon*, 584 S.W.2d 686 (Tex.1979); *Ex parte Werblud*, 536 S.W.2d 542 (Tex.1976); *Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967); *Ex parte Ratliff*, 117 Tex. 325, 3 S.W.2d 406 (1928).

The threshold question is raised by relator's contention that the district court in Collin County had no power to enforce by contempt the order to pay child support rendered by the district court of Dallas County. He cites *Ex parte Gonzalez*, 111 Tex. 399, 238 S.W. 635 (1922) and *Ex parte Chandler*, 580 S.W.2d 12 (Tex.Civ.App.— Houston [1st Dist.] 1979) for the proposition that a transferee court has no jurisdiction to punish a party for acts committed prior to the transfer because no court is the agent of another for the purpose of punishment for contempt of the latter. *Gonzalez* involved the transfer of a case from one district court in El Paso County to another in the same county. A statute then in effect provided that the transferee court

had jurisdiction of the case as though the case had been originally brought in that court. Despite the statute, the court in *Gonzalez* said that in no instance may one court punish acts of contempt directed at another court.

Prior to the adoption of the Family Code in 1973, it was held that the court granting a divorce had continuing exclusive jurisdiction over contempt proceedings instituted to enforce the provisions of its divorce decree and of motions to modify child support, but that venue for motions to change child custody or visitation rights was governed by the general venue statute, article 1995. *Boney v. Boney*, 458 S.W.2d 907, 911 (Tex. 1970). With the enactment by the legislature of the Texas Family Code in 1973, however, a new concept of "the court of continuing jurisdiction" was created. It is clear to us that in creating this concept the legislature recognized the need for all matters relating to the enforcement and modification of the divorce decree in matters that remained under the continuing supervision of the divorce court to be handled by a single court. *See Curtis v. Gibbs*, 511 S.W.2d 263, 266 (Tex.1974). Under the Family Code, when a party objects to hearing the case in the court of continuing jurisdiction, his or her remedy is to file a motion to transfer under § 11.06 of the Code. *Id.* at 268. When a transfer is ordered, the transferring court, except when it retains jurisdiction of another child, sends "the complete files in all matters affecting the child" and certified copies of entries in the minutes and of the decree of divorce to the transferee court. § 11.06(g). Section 11.05(a) provides, with certain exceptions,

---

$5,250.00 Arrearage
200.00 Attorney Fees
73.00 Court Costs
$5,523.00

Punishment is assessed at confinement in the Collin County Jail for 24 hours, confinement to continue until John Barnett purges himself of above arrearage, attys. fees and Court Costs.

JEAN YOUNG                              Clerk
District Court
/s/ John L. McCraw, Jr.    Judge District Court
219th                      Judicial District
Collin                     County, Texas

---

**2.** All references to statutes are to Vernon's Texas Civil Statutes Annotated; all references to the Texas Family Code are to Vernon's Texas Family Code Annotated.

*when a court acquires jurisdiction* of a suit affecting the parent-child relationship, that court retains continuing jurisdiction of *all matters* provided for under this subtitle in connection with the child, and *no other court has jurisdiction* of a suit affecting the parent-child relationship with regard to that child *except on transfer as provided in Section 11.06* or 17.06 of this code. (emphasis added).

The transferee court, upon transfer, becomes "the court of continuing jurisdiction." The Family Code provides in § 11.06(h):

A court to which a transfer is made becomes the court of continuing jurisdiction, and all proceedings in the suit are continued as if it were brought there originally.

■ Considering the legislative intent to posit all proceedings relating to the welfare of a child in one court, no logical reason exists why a transferee court may not enforce the prior orders of the transferor court just as no logical reason exists why it may not modify those orders when circumstances change. No constitutional or statutory provision exists to prevent it. On the contrary, the jurisdiction of courts is specified by constitution and statute, and specific legislative authority has been expressly provided for the transferee court to hear *all* matters which are *continued* as if originally brought in the transferee court.

There is precedent in law for one court to enforce by contempt proceedings the order of another court. In *Ex parte West,* 559 S.W.2d 674, 676 (Tex.Civ.App.—Dallas 1977), the court held that the new family district court could enforce by contempt proceedings the order of the domestic relations court which it replaced. In *Putty v. Faulkner,* 214 S.W.2d 831, 833 (Tex.Civ. App.—Texarkana 1948, no writ), it was held that the Fourth District Court of Rusk County could enforce the prior orders of the Special District Court of Rusk County after the latter had ceased to exist.

■ Our courts are empowered to enforce by contempt proceedings the child support orders of other states. *Ex parte*

*Helms,* 152 Tex. 480, 259 S.W.2d 184, 188 (1953); *Guercia v. Guercia,* 239 S.W.2d 169 (Tex.Civ.App.—Waco 1951), aff'd 150 Tex. 418, 241 S.W.2d 297, 297 (1951); *cf. Ex parte McBride,* 567 S.W.2d 536, 537 (Tex. Civ.App.—Dallas 1978) (must comply with procedures set forth in the Uniform Reciprocal Enforcement of Support Act). Even a foreign divorce decree ordering the conveyance of real property pursuant to an award in the divorce proceeding in a sister state will be enforced by Texas courts on the basis of comity. *McElreath v. McElreath,* 162 Tex. 190, 345 S.W.2d 722, 725 (1961). For a further analogue, only the court of civil appeals, after its jurisdiction attaches, has the power to compel obedience of an injunction pending appeal to the exclusion of the district court that had originally entered the injunction. *Ex parte Werblud,* 536 S.W.2d 542, 544 (Tex.1976); *Ex parte Duncan,* 127 Tex. 507, 95 S.W.2d 675, 679 (1936); *Ex parte Travis,* 123 Tex. 480, 73 S.W.2d 487, 489 (1934).

It would indeed be anomalous to permit courts to enforce by contempt proceedings the orders of another court in the circumstances described, but not permit the transferee court to enforce the orders of the transferring court in the face of the legislative intent clearly manifested in the Family Code—that the new "court of continuing jurisdiction" decide all matters relating to the subject matter of the case transferred. We hold that the district court of Collin County is empowered under the provisions of the Family Code to hear and decide pending and new contempt proceedings arising from the alleged failure to comply with orders of the transferring district court of Dallas County, regardless of whether all or some of the alleged contemptuous acts were committed before the transfer of the cause to the transferee court. To the extent that they conflict, the opinion in *Ex parte Gonzalez, supra,* is overruled and that of *Ex parte Chandler, supra,* is disapproved.

We do not intend that our holding here disturb or affect those decisions which, in the absence of a statutory provision similar

to § 11.06(h) of the Family Code, have held that a transferee court may not punish by contempt proceedings acts which were committed before a transfer. The issue decided in those cases is not the issue decided here; the legislative concept of "the court of continuing jurisdiction" was not involved in those cases. *See e. g. Ex parte Alvarado,* 543 S.W.2d 144 (Tex.Civ.App.—El Paso 1976); *Ex parte Lowery,* 518 S.W.2d 897 (Tex.Civ.App.—Beaumont 1975); *Carlson v. Johnson,* 327 S.W.2d 704 (Tex.Civ.App.—Houston 1959, no writ).

We now turn to Relator John's next contention that the commitment order of the district court is void because it is not based upon a written judgment of contempt. We sustain this contention.

It is well-settled that to satisfy due process requirements, both a written judgment of contempt and a written commitment order are necessary to imprison a person for civil constructive contempt of court. *Ex parte Puckitt,* 159 Tex. 438, 322 S.W.2d 597 (1959); *Ex parte Hawkins,* 545 S.W.2d 599 (Tex.Civ.App.—Texarkana 1977). *See generally* Lowe, *Contempt,* 6 Texas Practice, § 581 at 431 (2d ed. 1973). Even when a written judgment or order of contempt is signed, a written order of commitment delivered to the sheriff or other appropriate officer is necessary to legally imprison a person. *Ex parte Hardin,* 161 Tex. 567, 344 S.W.2d 152 (1961); *Ex parte Martinez,* 160 Tex. 328, 331 S.W.2d 209 (1960); *Ex parte Arapis,* 157 Tex. 627, 306 S.W.2d 884 (1957); *Ex parte Smart,* 152 Tex. 229, 256 S.W.2d 398 (1953); *Ex parte Palmateer,* 150 Tex. 510, 243 S.W.2d 160 (1951); *Ex parte Pepper,* 544 S.W.2d 836 (Tex.Civ.App.—Amarillo 1976); *Ex parte Spencer,* 508 S.W.2d 698 (Tex.Civ.App.—Texarkana 1974). There is no particular form, however, prescribed by law for an order of commitment. The directive that a person be placed in jail and detained may be contained in an authenticated copy of the court's judgment or in a separate order signed by the judge or by the clerk of the court at the judge's direction. *Ex parte Arapis, supra; Ex parte Smart, supra; Ex parte Palmateer, supra; Ex parte Lazaro,* 482 S.W.2d 12 (Tex.Civ.App.—San Antonio 1972); *Ex parte Woodruff,* 483 S.W.2d 951 (Tex.Civ.App.—Texarkana 1972).

In this case, no order or judgment of contempt was signed by the judge coincidently with the signing of the commitment order and the restraining of relator by the Sheriff of Collin County, and the commitment order does not contain the elements of a judgment or order of contempt. Although the commitment order refers to "the attached exact copy of the judgment of the Court herein," no judgment was attached. Since there was no written judgment or order of contempt, the requirement that "the order should clearly state in what respect the court's order has been violated" has not been satisfied. *Ex parte Proctor,* 398 S.W.2d 917, 918 (Tex.1966). The requirement is one of due process. The judgment or order of contempt must conform to the grounds set forth in the notice given relator to show cause why he should not be held in contempt. *See Ex parte Davis,* 450 S.W.2d 97, 98 (Tex.Civ.App.—Houston [14th Dist.] 1970). Since no written judgment or order of contempt existed, there is no finding upon which an order of commitment could be predicated. The commitment order, standing alone and without a concomitant judgment or order finding relator in contempt, is not enough.

Respondent Deborah by supplemental transcript, has brought forward to this court a judgment of contempt signed by the trial court on February 6, 1980. Her contention is that there now exists a judgment upon which the order of commitment can be based. If it was timely signed, the instrument of February 6 would constitute a valid judgment of contempt. As noted, however, relator filed his application for a writ of habeas corpus in this court on January 29, 1980, and this court on January 31, 1980, granted the writ of habeas corpus, ordering relator released on bond pending disposition of the cause. When this court on January 31 granted the writ of habeas corpus and released John Barnett on bond, our jurisdiction over the relator attached to

the exclusion of any other court, including the committing court. The court which committed relator on an oral judgment may not, some 80 days thereafter, attempt to cure its denial of due process by entering a written judgment. *Ex parte Spencer*, 508 S.W.2d 698 (Tex.Civ.App.—Texarkana 1974). The trial court may cause a contemnor to be detained by the sheriff or other officer for a short and reasonable time while the judgment of contempt and order of commitment are prepared for the judge's signature. Furthermore, the trial court may correct an error prior to jurisdiction attaching in a proper court by the granting of a writ of habeas corpus. In this case, however, the trial court lost jurisdiction to sign a judgment of contempt when this court took its action on January 31. *Ex parte Coward*, 110 Tex. 587, 222 S.W. 531 (1920); *Ex parte Pruske*, 575 S.W.2d 417 (Tex.Civ.App.—Austin 1978); *Ex parte Hawkins*, 545 S.W.2d 599 (Tex.Civ. App.—Texarkana 1977); *Ex parte Spencer*, 508 S.W.2d 698 (Tex.Civ.App.—Texarkana 1974); *see Ex parte Arledge*, 463 S.W.2d 29 (Tex.Civ.App.—Texarkana 1971). In view of our holding, it is unnecessary to consider John's remaining points.

Relator is ordered discharged from custody under the commitment order issued by the 219th Judicial District Court in Collin County.