**Petition for Writ of Habeas Corpus Granted and Opinion issued December 12, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00815-CV

_____

## IN RE JAVIER LINAN, JR., Relator

---

## Original Proceeding on Petition for Writ of Habeas Corpus

---

## OPINION

Relator, Javier Linan, Jr., requests habeas corpus relief from a September 16, 2013 trial court "Order Revoking Suspension and for Commitment to County Jail."[1] On September 27, 2013, after a preliminary review of relator's petition for writ of habeas corpus, we ordered relator released upon his posting of a bond in the

---

[1] The underlying case is *In the Interest of J.L., III*, a child, cause number 2009-13030, pending in the 247th District Court of Harris County, Texas, the Honorable Bonnie Crane Hellums presiding.

amount of $1000.00, pending a final determination of his petition. Because we conclude that relator is entitled to relief, we grant his petition for writ of habeas corpus, order relator released from the bond set by this Court on September 27, 2013, and order him discharged from custody.

## Background

On September 22, 2009, an Order in Suit Affecting the Parent-Child Relationship was signed by the 247th District Court of Harris County, Texas. Pursuant to this order, *inter alia*, relator was ordered to pay child support in the amount of $338.35 per month to real party in interest, Yanidd Bianca Alvarado. Relator was also ordered to pay $116.69 every month as additional child support for health insurance reimbursement.

On April 26, 2013, real party in interest filed a Motion for Enforcement of Child Support Order against relator. The motion alleged that relator failed to pay or only partially paid the court-ordered child support and medical reimbursement for the months of December 2012 through March 2013. The motion requested 180 days jail for each violation, to run concurrently, community supervision for 10 years, judgment on arrears, and attorney's fees.

On July 2, 2013, relator appeared for a hearing before an associate judge on the motion for enforcement. At the hearing, relator waived his right to counsel. At the conclusion of the hearing, relator was found in contempt for failure to make

child support payments and failure to make medical reimbursement payments for the months of December 2012 through April 2013. On July 12, 2013, the associate judge signed an order granting a judgment for child support arrearages and medical support arrearages and sentencing relator to 180 days in Harris County jail for each violation, to run concurrently. The associate judge's order also specified that relator not be given good conduct time credit for the time spent in jail. Finally, the order suspended relator's jail sentence. The terms and conditions for suspended commitment included paying $50.00 per month towards relator's child support arrears, $25.00 per month towards relator's medical reimbursement arrears, $700.00 in attorney's fees, and continued payment of all child support as ordered by the associate judge. Compliance hearings were set for September 12, 2013 and December 18, 2013. The record does not reflect that the July 12, 2013 order was adopted by the referring court. *See* TEX. FAM. CODE ANN. § 201.007(a)(13) (West 2008) (associate judge's authority to "order the detention of a witness or party found guilty of contempt" is limited by the required approval of the referring court); *id.* § 201.013(b) ("[T]he proposed order or judgment of the associate judge becomes the order or judgment of the referring court only on the referring court's signing the proposed order or judgment.").

On September 12, 2013, relator appeared at his compliance hearing. At the conclusion of the hearing, the presiding judge—a retired district judge apparently

3

sitting by assignment—found that relator had not complied with the terms of the July 12, 2013 order, revoked relator's suspension, and orally pronounced, "I reinstate the sentence of . . . 180 days for each contempt violation, as set out in the judgment of July the 12th, 2013." The judge then remanded relator to the custody of the sheriff to be kept in jail until the terms of his sentence were complete or until relator was brought back to court for further findings. On September 16, 2013, the trial court signed the Order Revoking Suspension and for Commitment to County Jail.

On September 26, 2013, relator filed his petition for writ of habeas corpus with this Court. Subsequently, we ordered relator released upon his posting of a bond, pending full submission of the matter.

**Standard of Review**

The purpose of a habeas corpus proceeding is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully confined. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979). In a habeas corpus proceeding, the order or judgment challenged is presumed to be valid until the relator has discharged his burden of showing otherwise. *Ex parte Occhipenti*, 796 S.W.2d 805, 809 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding). The relator bears the burden of showing that the contempt order is void and not merely voidable. *In re Munks*, 263 S.W.3d 270, 272–73 (Tex. App.—

4

Houston [1st Dist.] 2007, orig. proceeding). For this Court to order the release of a relator in a habeas corpus proceeding, we must find that the trial court's order directing the relator to be incarcerated is void because of a lack of jurisdiction or because the relator was deprived of liberty without due process of law. *In re Butler*, 45 S.W.3d 268, 270 (Tex. App.—Houston [1st Dist.] 2001, orig. proceeding). Here, relator does not challenge the trial court's jurisdiction. All of his arguments are based on lack of due process.

## Analysis

Relator asserts his confinement is illegal because: (1) the commitment order was not signed until four days after relator was orally sentenced and committed to jail; (2) the commitment order does not contain sufficient language for commitment; (3) relator did not receive notice that his suspended commitment could be revoked and that he would be subject to jail on the date of the compliance hearing; (4) the contempt order did not specify the length of relator's suspended commitment; and (5) the contempt order did not give good conduct time credit for time spent in county jail.

## Delay in Signing Commitment Order

In his first issue, relator asserts that his due process rights were violated because the Order Revoking Suspension and for Commitment to County Jail was

5

not signed until at least four days after the trial court had orally sentenced and committed relator to jail.

At the conclusion of the September 12, 2013 hearing, the trial court orally reinstated relator's 180 days jail sentence to begin immediately and remanded relator to the custody of the sheriff to be kept in jail until the terms of his sentence were complete or until relator was brought back to court for further findings. The trial court subsequently signed the written commitment order on September 16, 2013—four days after the sentence had been orally pronounced. The real party in interest does not dispute the timeline of these events in her response.

A person may not be imprisoned for contempt without a written order of commitment. *Ex parte Amaya*, 748 S.W.2d 224, 224 (Tex. 1998) (orig. proceeding). An arrest for contempt without a written commitment order is an illegal restraint from which a prisoner is entitled to habeas relief. *See id.* at 225. However, a trial court may cause a contemnor to be detained by the sheriff for a short and reasonable time while the judgment of contempt and order of commitment are prepared for the judge's signature. *Id.*; *In re Butler*, 45 S.W.3d at 271. Less than twenty-four hours to prepare a commitment order is a short and reasonable time. *See Ex parte Amaya*, 748 S.W.2d at 225; *In re Butler*, 45 S.W.3d at 271. Two or three days between oral rendition of commitment and the signing of the written order of commitment, however, has been held to constitute an unduly

6

delay that necessitates habeas relief. *See Ex parte Amaya*, 748 S.W.2d at 225 (three-day delay too long); *Ex parte Jordan*, 865 S.W.2d 459, 459 (Tex. 1993) (orig. proceeding) (same); *In re Dominguez*, No. 14-08-00206-CV, 2008 WL 1934816, at *3 (Tex. App.—Houston [14th Dist.] May 5, 2008, orig. proceeding) (mem. op.) (two or three-day delay too long); *see also Ex parte Morgan*, 886 S.W.2d 829, 832 (Tex. App.—Amarillo 1994, orig. proceeding) (four-day delay too long).

The fact that an associate judge previously signed a contempt order in July does not change this analysis. On July 12, 2013, the associate judge signed an "Order Holding Respondent in Contempt for Failure to Pay Child Support, Granting Judgment for Arrearages, and Suspending Commitment." Because this order was signed only by the associate judge, it was not final. *See Graham v. Graham*, No. 01-12-00635-CV, 2013 WL 4520924, at *1 (Tex. App.—Houston [1st Dist.] Aug. 27, 2013, no pet.) ("Associate judges do not have the power to render final judgment outside the context of certain limited exceptions . . . ."); *In re J.W.B.*, No. 14-12-00410-CV, 2012 WL 1695208, at *2 (Tex. App.—Houston [14th Dist.] May 15, 2012, orig. proceeding) (mem. op.) ("Before the order becomes the order of the referring court in this case, the referring court must have signed the proposed order or judgment."); *In re Lausch*, 177 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding.) ("[T]he associate judge's

7

oral pronouncements from the bench and his handwritten Associate Judge's Report do no constitute a final order of enforcement."). An associate judge may "order the detention of a witness or party found guilty of contempt, pending approval by the referring court as provided by Section 201.013". TEX. FAM. CODE ANN. § 201.007(a)(13); *see also id.* § 201.013(b) ("[T]he proposed order or judgment of the associate judge becomes the order or judgment of the referring court only on the referring court's signing the proposed order or judgment."). Here, the record shows that the trial court never adopted the July 12, 2013 contempt order. It, thus, is not a final order and does not impact our analysis in this case.

Because the trial court did not sign a written commitment order until four days after the oral rendition of commitment, we hold that relator's due process rights were violated and that the commitment order is void. We sustain relator's first issue.[2]

## Conclusion

We grant relator's petition for writ of habeas corpus, order relator released from the bond set by this Court on September 27, 2013, and order relator discharged from custody.

Laura Carter Higley
Justice

---

[2] Due to the disposition of relator's first issue, we need not address the remaining issues presented in his brief.

Panel consists of Justices Keyes, Higley, and Massengale.